Jackling v. Brighthouse Life Insurance Jackling v. Brighthouse Life Insurance Company Good morning. John Schaap on behalf of the appellee. I want to point out that Appellant's Counsel did not answer the question of what language are you claiming is ambiguous. There was not even an attempt to answer that question. There's no language that's ambiguous here. He's trying to rely on the fact that it seems likely we didn't do a thorough enough investigation once documents were presented for one claim late in Ms. Jackling's life on which was paid to claim that we had to pay going back 14 years. And the other issue that was not discussed was the statute of limitations. This case is pretty simple. Mrs. Jackling and Mr. Jackling presented claims or said that they wanted to present a claim. My client said, okay, here's the paperwork you have to fill out. Here's the information we need to present your claim. Didn't hear anything. We'd follow up, asking them, nothing. After some time would go by, we'd close our claim. A couple of years would go by, the process would repeat itself. There's no explanation for how the statute of limitations, there's some reference in the reply brief to some arguments about a tolling as a result of the arbitration proceeding that was commenced that was not required, that Mr. Jackling simply gave up on the case at some point after requiring us to get involved in this arbitration for some time, withdrew the case and then proceeded to litigation. Under no circumstance- The argument is that equitable tolling should apply because the insurance company misled them into thinking there could be arbitration or that it would participate in arbitration. How do you respond to that, the equitable tolling argument? Well, first of all, by the time the arbitration proceeding was commenced, the statute had already expired. So that's the first response to that. Secondly, what did we do exactly that convinced or played any role in, I believe the word used in Appellant's reply brief is that we slow played the arbitration proceeding. The facts show exactly the opposite. He filed a proceeding, we said we are under no compulsion to arbitrate. There's no agreement to arbitrate here. We are not going to arbitrate. That's what we said, that's what we said repeatedly. Ultimately, Mr. Jacklin complained to the Department of Financial Services of the State of New York, who pressured us to agree to arbitrate. And we said, as an accommodation to the Department of Financial Services, we will agree to arbitrate this claim. How those facts result in some equitable tolling, I don't see how that's possible. It shows that Mr. Jacklin manipulated the process. Ultimately would chew his claim, waited nine months after withdrawing the claim, then brought an action in New York State court. There's nothing in there that would toll the statute, and there is a New York State statute under the New York CPLR that talks about how an arbitration proceeding could result in a toll. That is not met here. It specifically does not allow for claims that were voluntarily discontinued in the arbitration, and that's what happened here. There are no other questions. All right, thank you. Thank you. Mr. Shapp, Mr. Tennant, you have two minutes for rebuttal. Thank you, Your Honor. Just with respect to the statute of limitations, if I'm permitted to address that, the point that I would like to leave the court with is that the policy is ambiguous with respect to what the trigger is for bringing an action. The fact is that the Bright House, as opposing counsel indicated, did not deny any claims. There's nothing in the record that there was ever any denial, and that's important because the policy in two places can be reasonably read by and ensured to have a trigger that a claim be denied. There is language that the Bright House has pointed to which talks about if, in your opinion, we have failed to pay the benefits provided by the policy, you may bring an action. What is ambiguous about the totality of the language in the policy is that in two places, at 4717 at page 16 and page 9, the policy talks specifically in terms of claims that are denied, and it would be our position that a reasonable insurer would read the policy and believe that there is no requirement to actually file a claim until a coverage issue has been actually denied by the carrier. So if they filed a claim right now, that would be timely in your view because there's been no denial? That's correct, Your Honor. So the statute never runs? Well, under the policy language, that would be correct, unless and until the carrier actually denies a claim. But Mr. Jacklin's own letter of June 13, 2014, references the carrier's repeated denials. You denied from the beginning. You denied benefits for this as a result of your repeated denials. I paid the bills for the personal care. Aid is out of pocket. Doesn't that indicate that he understood he had been denied? Well, that's Mr. Jacklin's pro se understanding of a carrier that has certainly not paid on his claims. The issue is whether they have effectively and under the terms of the policy actually denied a claim within the meaning of the policy. All right. Well, the red light is on, Mr. Tennant. I don't know if you can see it, but we will reserve a decision on this case. Thank you for coming in as pro se counsel, pro bono counsel, excuse me. And I'm glad we got the camera to work. So thanks. All right. Thank you very much, Your Honor. Thank you. Have a good day.